## MAHONEY V. PEOPLE.

*Appeal — case on — evidence not returned presumed to warrant decision — Criminal law — Robbery — force required to constitute.*

In the absence of all the evidence given upon the trial, the appellate court will assume, when the question is upon the sufficiency of the evidence, that that which is not returned to it warranted the ruling and justified the verdict. Accordingly, where a material part of the evidence before the jury was the physical action of a witness, *held*, that a return only of the words used by him would not enable the court to say there was insufficient evidence to sustain a verdict.

Under the statute relating to robbery in the first degree, the force and violence required is only such as is sufficient to take the property without the owner's will. Accordingly, where an accomplice of the prisoner crowded the complainant against the door of a street car, whilst the prisoner threw his arm around the complainant's neck, pulled him toward himself, and picked his pocket, *held*, sufficient force and violence to constitute robbery.

ERROR to review the conviction of the plaintiff in error, Michael Mahoney, who was on the 14th of April, 1873, at a court of general sessions of the peace of the city and county of New York, held before Hon. John K. Hackett, recorder of the said city, convicted of the crime of robbery in the first degree and sentenced to the State prison for twenty years. The material facts fully appear in the opinion.

*John O. Mott*, for plaintiff in error.

*Benjamin K. Phelps*, district-attorney, for the people.

WESTBROOK, J. On the 5th day of April, 1873, upon a somewhat rainy night, about the hour of ten and a-half o'clock, one Peter R. Carson, who was on his way to his residence at No. 319 East Twentieth street, in the city of New York, from Barnum's Museum, having hold of his boy with one hand and an umbrella in the other, was immediately on stepping upon the platform of a Third avenue car, robbed of his pocket-book and contents by the prisoner.

The questions which the counsel for the plaintiff in error presents are: Was the crime committed that of which he was found guilty, to wit., robbery in the first degree, or was it simply larceny from the person?

The prisoner's counsel, upon the trial conceded "that his client was guilty of grand larceny in having feloniously taken the complainant's property from his possession," but insisted "that it was unaccompanied by violence within the meaning and comprehension of the statute." The recorder, after reading to the jury our statute which defines the crime of robbery in the first degree, left to them the question of the truth of the story of the complainant, and then added, "If you believe his statement with reference to the occurrence to be true, I charge you that the force used· by the prisoner is that character of violence comprehended by the statute. The statute does not define the character or characters of the force or injury that must be used to constitute one of the elements of robbery in the first degeee. It nowhere says that a person shall be knocked down and beaten senseless before the assailant can come within its comprehension; but I charge you, if you believe Mr. Carson's statement to be true that the prisoner put his arm around his neck and violently and forcibly then and there jerked his head back in the manner that he described that he did, and forcibly and feloniously took from his person his pocket-book and money, that it was a robbery with felonious intent and accompanied by violence."

Various exceptions taken by the prisoner's counsel to this charge present this question: Conceding the truth of Mr. Carson's evidence, is the prisoner guilty of the crime whereof he stands convicted?

The narration of the occurrence by the complainant is as follows, . "I stepped on and made an effort to get into the car; there was a very large man stood right in the front door of the car holding me back; that man (the prisoner) came and put his arm around my neck, pulled upon me, pulled up my head so (showing), and I had this arm, my left arm, kind of up, and then he pulled me two or three times; said I, 'What are you doing?' he said, 'I want to get that lady in.' * * * I saw no lady. * * * Well, perhaps in less than one-tenth part of the time I have been stating it, he stepped off; I felt his hand come out of my pocket."

"Q. (By the court.) What did he do to your neck, put your head up ? A. Yes, sir, and pulled back with his left arm.

"Q. (By the assistant district-attorney.) Where did he stand then, behind you? A. He stood rather in front of me, in that way (showing); I stood this way, he stood in front of me, reaching around; the other man stood here, crowding me against the door." The wit-

Mahoney v. People.

ness then described the contents of his pocket-book, and said that he felt for and missed it as soon as the prisoner withdrew his hand. On his cross-examination, the witness further testified:

"Q. How did he put his arm around your neck ; was he pushing you one side? A. No; he was pulling me to him.

"Q. Where was he; in what portion of the car, was he next to the driver, or where ? A. He was just inside, on the edge, like that, you know ; I stood right here ; he reached in and got his hand around my neck and pulled me to him, pulling me out, pulling up in the front; up so, you know ; I stood here.

"Q. You asked him what he was doing? A. Yes, sir.

"Q. Did he hurt you? A. He did not hurt me particularly ; he gave me a pretty good jerk."

The foregoing is all the evidence given upon the trial showing the violence used, and our statute governing the case is as follows : "Every person who shall be convicted of feloniously taking the personal property of another from his person or in his presence and against his will by violence to his person, or by putting such person in fear of some immediate injury to his person, shall be adjudged guilty of robbery in the first degree." 2 R. S., 67, § 55.

In discussing the point made by the prisoner's counsel that the recorder erred in instructing the jury, that if they believed the truth of the evidence of the complainant hereinbefore detailed, then the prisoner was guilty of the offense defined in the statute just quoted, it is apparent that it is liable to the fatal objection that the error does not affirmatively appear because the bill of exceptions is so drawn as not to show to this court all the evidence of violence upon which the court and jury acted. It is an elementary principle that in the absence of all the evidence given upon the trial the appellate court will assume when the question is upon the sufficiency of the evidence that that which is not returned to it warranted the ruling and justified the verdict. Upon the trial of this indictment not only did the complainant undertake to describe the alleged robbery by words, but by acts, he exhibiting to the jury by physical action the mode and manner thereof. That description which the court and jury, by and before which the prisoner was tried, saw, and from seeing which, a correct idea of the force and violence used in perpetrating the theft can alone be formed, this court cannot see and because it cannot it is unable to say, and cannot say that the recorder erred in his charge. On the contrary, upon

the well-settled rule to which we have alluded, that the tribunal whose proceeding is reviewed is presumed to have decided rightly unless the error affirmatively appears, this court must assume that the representation by action of the force used in the perpetration of the crime and which it is impossible for us to learn from the bill of exceptions sufficiently proved to it that the prisoner used violence enough to bring him within the statute. For this reason alone the conviction should be affirmed.

But it also seems to us that the violence which the words proved was sufficient to justify the charge. The amount and degree of violence which the accused must exert to bring him within the statute defining robbery, is not declared and it manifestly could not be. The gravamen of the crime consists in taking the personal property of another from his person or in his presence and against his will *by violence to his person*, or by putting such person in fear of some immediate injury to his person. In other words, the violence to the person or the fear of immediate injury to the person, which against the owner's will is *sufficient* to take his property, will, if the taking be felonious, render the taker amenable to the statute. It is not the extent and degree of force which makes the crime, but the success thereof. In short, the force which is sufficient to take the property against the owner's will is all that the statute contemplates; the distinctions between robbery and larceny consisting in this. In the latter the act is accomplished secretly or by surprise or fraud, while in the former the felonious taking must be accompanied by circumstances of violence, threats or terror to the person despoiled. 2 East P. C., 552.

In the case before us the accomplice of the prisoner crowds the complainant against the door of the car whilst the accused throws his arm around the complainant's neck, pulls him toward him, and then rifles his pocket. If this statement be true, it amply justified the charge, for whether the force gave pain or not, it accomplished the theft; and by it, and it alone, Mr. Carson was feloniously deprived of his property against his will though conscious of the act, and trying to prevent it.

The books contain many cases of convictions of the crime of robbery, when the force employed was evidently no greater than in this. With the citation of one very similar we end the discussion. In *Commonwealth* v. *Snelling*, 4 Binney, 379 ; "a special verdict found that the prisoner took the prosecutor by the cravat with

Mahoney v. People.

an intention to steal his watch, and also pressed his breast against the prosecutor's, and held him against a wall during which he took the prosecutor's watch from his fob without his knowing it, and that the prosecutor had no idea that he meant to rob him, but was afraid that he meant to whip him; this was held to be robbery." 2 Whart. Cr. Law (7th ed.) § 1701.

The principle which the case just cited determines is this, that when the force is employed to divert the owner's attention whilst he is unconsciously deprived of his property, the taker is guilty of robbery, though by means of the force which distracts the attention, the larceny is artfully and unknown to the owner completed. This is sound sense and good law. The force strategically employed so as to deceive an opposing commander as to the real object, whilst the latter is stealthily but successfully pursued is that which wins the battle, though employed by indirection to accomplish the result, and the force which a thief uses to and upon the person of his victim to consummate a robbery, if successful is as much the successful force which robs, when exerted to bewilder and confuse, as when used and exerted directly upon the main object. In either the taking would be the result of force, though in the one case indirectly applied, and in the other directly.

In the case before us the most that could be said in favor of the prisoner is that his confederate and he used force to distract Mr. Carson's attention whilst his pocket was picked. Unlike the Pennsylvania case, however the hand which grasped the pocket book was felt, and the theft discovered. The force however was in both cases to give the most favorable construction to the prisoner of the evidence, used for the same purpose, and if thus employed in one case it was robbery, it was equally so in the other.

The result of our examination is that the conviction and the judgment in this case must be affirmed.

*Judgment affirmed.*